Nash, J.
 

 The case is before us upon an appeal from an interlocutory order of the Court below, dissolving the injunction heretofore granted. The plaintiff requests the Court not to suffer the defendant to avail himself of the protection, which the law throws around him, because of a fraud, it is alleged, perpetrated by him and his father, Richard Younger, upon his intestate, John Griffis. It is impossible to read the plaintiff’s bill and not be satisfied that there is no foundation for this charge. Richard Younger, the father, was indebted to John Griffis, the intestate, by note, and the defendant, a minor of eighteen years of age. lived with him and constituted a part of his family. In the month of July 1S50, a notice was publish
 
 *521
 
 ed by the father in the public papers, that “he had set his son at perfect liberty to transact his own business, make his own contracts, pay his own debts,
 
 manage his own farm, and claim the products from said farm,
 
 as if he had arrived at full age.” In two months thereafter, to-wit, in the succeeding September, John Griffiis purchased from this liberated boy the tract of land in question. The bill no where charges, that John Grffis believed, from the published notice, that thereby the defendant was invested with power to make a valid conveyance of his land. He must have known it could have no such effect. But again the bill states, that the consideration given for the land was four hundred dollars, which was paid “in a wagon and horse, and cash to the amount of one hundred and fifty dollars, and the residue by the transfer of a note or. bond held by John Griffis on the said Richard Younger.” What was the estimated or real value of the wagon and horse, or the amount of the note or bond, we are not told ; but we are assured, “that the sale was highly
 
 beneficial to
 
 the defendant, as it
 
 enabled him
 
 to remove to the State of Missouri, and carry with him his father and family.” The veil attempted to be thrown over the transaction is too slight to mislead any one. If a fraud was perpetrated, it does not lie at the door of the defendant, and it is a matter of surprise, that the defendant should have been enjoined from asserting his legal right in disposing of his land. If any doubt could be entertained as to the true .character of the transaction, it is removed by the'answer. It states that, at the time the circumstances occurred, Richard W. Younger, the father of the defendant, was entirely insolvent, and indebted by note to John Griffis, who was his nephew, in the sum of two hundred and thirty dollars, and the defendant being the owner of the tract of land in controversy, the plans was formed between his-father and John Griffis to make the land pay the note, and furnish the means of transporting the family to the State
 
 *522
 
 of Missouri: that the defendant was under sixteen j'ears of age at that time, and never received any part of the price of the land, but his portion of his travelling expen* ses : and that the money advanced by Griffis was seventy-five dollars. Here then is the case of a boy, not quite sixteen, induced by a needy father to sell his land, his only patrimony, to pay a debt, for which he was in no way bound, and the bill alleges it was highly beneficial to him ; we cannot perceive how. If the whole transaction was not a fraud upon the defendant, it was an unprincipled advantage taken of his youth and ignorance, and can receive no countenance or protection in a Court of Equity.
 

 The bill prays that the defendant shall be enjoined from selling the land, and that it, the land, may be held by a decree of this Court, liable to pay to the plaintiff what his intestate paid for it. In addition to the reasons assigned in the bill, why the prayer should be granted, it has been urged upon us in the argument, that the injunction ought not to be dissolved, because the defendant has not offered to repay the money, nor to return the property given by John Griffis, nor to compensate the' plaintiff for the improvements put upon the land. No one of these things was he bound to do. The bill does not allege that any portion of the price of the land was ever received by the defendant — the allegation is general that it was paid, but to whom it does not state — and the defendant expressly denies he had ever received any thing but his portion of the travelling expenses, and that doubtless from his father. As to the improvements, the Bill alleges that John Griffis sold the land to Faucett and Rogers, with warranty, who made valuable improvements, after the premises were recovered from them by the defendant.— Mr. Griffis had paid them their purchase money with interest on it. If, then, improvements had been put upon
 
 *523
 
 the land, the question of compensation cannot arise between these parties.
 

 We have examined the authorities cited in the argument by the plaintiff’s counsel, and while we do not question their soundness, we do not consider them as applicable to this case. Chancellor Kent, in treating of the contracts of infants, lays down the general proposition, that an infant is not to be protected in his
 
 fraudulent
 
 acts, and he refers to the case of
 
 Badger
 
 v.
 
 Phinney,
 
 15 Massachusetts Rep. 6+43, cited at the bar. The only question was whether the administrator of the infant could avoid his contract, he having died without so doing. The case of
 
 Clark
 
 v.
 
 Cobley,
 
 2nd Cox 173, is more in point, but is still no authority in this case, for the purpose for which in was used. The defendant’s wife, while sole, had executed to the plaintiff two notes. Upon the marriage, the defendant took them up, giving his own individual bond for the amount. Being sued, he pleaded his infancy, which was allowed him. Thereupon, the bill was filed and the prayer was, that the defendant should be decreed to pay the amount of the bond or return the notes, and the Court decreed the return of the notes upon the ground of
 
 fraud
 
 practised upon the plaintiff. We have already said, we do not consider the defendant as having been guilty of any fraud, and that he had not received from John Griffis any part of the price of the land. The horse and wagon and money were in the possession of the father, and the note, as far as disclosed by the bill, was so likewise, and the debtor died insolvent soon after he reached Missouri. We do not consider the difficulties, to which the plaintiff alleges he will be exposed in making a recovery against the defendant, if the injunction shall be dissolved, as any reason, why it should be continued. They are difficulties into which John Griffis entered with his eyes open; he voluntarily encountered them. The plaintiff has no claim to the relief he seeks.
 

 
 *524
 
 The interlocutory order of the Court below, retaining the injunction to the final hearing, is erroneous and must be reversed, and the injunction dissolved with costs. The plaintiff’ must pay the costs of this Court.
 

 This opinion will be certified to the Court of Equity of Alamance County.
 

 Per Curiam.
 

 Ordered accordingly.